**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CRIMINAL ACTION NO. 16-22-DLB-CJS**

**UNITED STATES OF AMERICA**                                        **PLAINTIFF**


**MEMORANDUM OPINION AND ORDER**


**TERENCE DICKENS**                                                 **DEFENDANT**

**\*\*\*\*    \*\*\*\*    \*\*\*\*    \*\*\*\***

This matter is before the Court upon Defendant Terence Dickens's Motion for Judgment of Acquittal (Doc. # 285) and Motion for a New Trial (Doc. # 286).  The government having filed its Responses (Docs. # 295 and 296), and the time for Reply having now expired, this matter is ripe for the Court's review.  Having reviewed the parties' briefing, Defendant's Motions will be **denied**.

## I.    Factual Background

On May 12, 2016, Dickens was indicted by a federal grand jury.  (Doc. # 3).  The Indictment alleged that Dickens, also known as "K.T.", conspired with others to steal checks from mailboxes, erase the names of designated payees and replace them with the names of co-conspirators, and then cash the checks or deposit them into bank accounts associated with the conspiracy. *Id.* at p. 2-4. The Indictment charged Dickens with one count of conspiracy to commit bank fraud and twelve counts of aiding and abetting aggravated identity theft.  *Id.* at p. 1-2, 5-6.  A superseding indictment was returned on September 8, 2016, charging the same conduct, but reducing the identity

theft counts from twelve to six distinct transactions. (Doc. # 134). At the conclusion of a five-day trial, the jury convicted Dickens of all seven counts. (Doc. # 276).

At the close of the Government's case, Dickens orally moved for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29. The Court denied that motion. (Doc. # 272). After conviction, Dickens renewed his motion, and the Court denied the renewed motion. (Doc. # 277). Proceeding on a *pro se* basis, Defendant has now filed a written Motion for Judgment of Acquittal (Doc. # 285), and a Motion for New Trial. (Doc. # 286). The Court will address each Motion in turn.[1]

## II. Analysis

### A. Motion for Judgment of Acquittal

#### 1. Standard of Review

In order to prevail on a motion for judgment of acquittal, the convicted defendant must demonstrate that the evidence was insufficient to prove the offense charged. The jury's verdict must stand if, viewing the evidence in the light most favorable to the Government, "any rational trier of fact" could have convicted the defendant. *United States v. Stewart*, 729 F.3d 517, 526 (6th Cir. 2013) (citing *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010)). The Court may not "weigh the evidence presented, consider the credibility of witnesses, or substitute [its] judgment for that of the jury," and must resolve all conflicts in evidence in favor of the Government and draw all reasonable

---

[1] Defendant submitted two separate motions. However, the Motion for Judgment of Acquittal contains arguments more appropriately made in a Motion for New Trial. Because *pro se* defendants are entitled to greater leniency, *see Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the Court will liberally construe the motions together as a Motion for Judgment of Acquittal, or in the alternative, for a New Trial, and address Defendant's arguments under the appropriate standards.

inferences in its favor as well.  *United States v. Siemaszko*, 612 F.3d 450, 462 (6th Cir. 2010) (citing *United States v. M/G Transp. Servs., Inc.*, 172 F.3d 584, 588-89 (6th Cir. 1999)).  Thus, a convicted defendant challenging the sufficiency of the evidence is presented with an "uphill battle."  *United States v. Wagner*, 382 F.3d 598, 610 (6th Cir. 2004).

Dickens presents three challenges to his conviction.  First, he claims that his arrest was unlawful, and that any evidence obtained at the time of his arrest should have been excluded.  Second, he asserts that identifications and statements from alleged co-conspirators are insufficient, on their own, to sustain a conviction.  Finally, he makes a broad assertion that the Government did not prove that he was part of the conspiracy. The Court will address each of Dickens's arguments in turn, but will reserve his unlawful arrest argument for the Motion for New Trial section.

### 2.  The evidence is sufficient to sustain the jury's guilty verdict for conspiracy to commit bank fraud

On Count One, the jury convicted Dickens of conspiring to commit bank fraud in violation of 18 U.S.C. § 1349.  To prove bank fraud, the Government must show "(1) that the defendant knowingly executed or attempted to execute a scheme to defraud a financial institution; (2) that the defendant did so with the intent to defraud; and (3) that the financial institution was insured by the FDIC."  *United States v. Everett*, 270 F.3d 986, 989 (6th Cir. 2001) (citing *United States v. Hoglund*, 178 F.3d 410 (6th Cir. 1999)).  To prove a conspiracy to commit bank fraud, the Government must prove that the defendant conspired or agreed with another person to commit bank fraud, and that the defendant knowingly and voluntarily joined the conspiracy.  *See United States v. Rogers*, 769 F.3d

372, 377 (6th Cir. 2014). In this case, the Government need not prove that Dickens committed bank fraud, but only that he conspired to commit it.

Dickens claims that there are no corroborating facts to support the co-conspirators' identifications and confessions, and therefore, there was insufficient evidence that he conspired to commit bank fraud. (Doc. # 285 at 2). This is simply not the case. The evidence against Dickens was overwhelming.

Co-conspirators Shellie Grubbs, Vickie Lamb, and Thomas Jones all testified during trial. It is not the Court's job, at this stage, to weigh the credibility of their testimony. *Siemaszko*, 612 F.3d at 462. The Sixth Circuit has stated that "[t]here is no place … for arguments regarding a government witness'[s] lack of credibility in a Rule 29 motion for acquittal before a federal trial judge." *United States v. Adamo*, 742 F.2d 927, 934-35 (6th Cir. 1984). Witness credibility may only render evidence insufficient "in the most extreme cases" where it is "so inherently incredible … that no reasonable person would believe it beyond a reasonable doubt." *United States v. Morrison*, 125 F.3d 856 (6th Cir. 1997) (quoting *United States v. Chancey*, 715 F.2d 543, 546 (11th Cir. 1983)).

Here, the witnesses' testimony was not "inherently incredible." In fact, it was strongly corroborated by other evidence. During trial, the Government presented an abundance of corroborating facts to support the co-conspirators' assertions that Dickens was "K.T." and that he had participated in the conspiracy. Shellie Grubbs cooperated with investigators, described K.T. and his car, and provided officers with her cell phone, which contained a number for K.T. During Grubbs's interview, K.T. called her cell phone. The recorded statements that K.T. made during the call corroborated Grubbs's statements. Then, Grubbs set up a meeting with K.T. to allow officers to interdict him

4

through a traffic stop. Dickens arrived at the prearranged location, driving the car that Grubbs described. A cell phone found in the vehicle also contained evidence of the bank fraud scheme. All of this evidence corroborated Grubbs's statements and her identification of Dickens as K.T.

Vickie Lamb also provided information to law enforcement and testified at trial. Lamb's statements were consistent with Grubbs's earlier statements. Additionally, Lamb provided physical evidence including a bag of stolen checks, an X-acto knife, debit cards, and bank account documents. Lamb also provided cell phone records that corroborated her statements. Co-conspirator Jones also provided statements against Dickens. Jones's cell phone records revealed text messages that corroborated his statements.

Consistent statements from multiple co-conspirators, along with an abundance of corroborating evidence, supports the credibility of the co-conspirator witnesses. Their testimony was far from being "so incredible" that a reasonable juror would not believe it. Accordingly, the co-conspirators' statements implicating Dickens and identifying him as "K.T." were sufficient to sustain a guilty verdict.

Next, Dickens alleges that "prosecution has not proven the defendant to be part of a conspiracy," and suggests instead that he was merely "acquainted" with the members of the conspiracy. (Doc. # 285 at 2). Once again, the proof at trial showed otherwise. To prove that Dickens joined the bank fraud conspiracy, the Government does not have to prove the existence of an explicit agreement; instead, it can prove by circumstantial evidence and inference that Dickens agreed to join the conspiracy and was a voluntary and willful participant in it. *See United States v. Maliszewski*, 161 F.3d 992, 1006 (6th

Cir. 1998). The evidence at trial showed that Dickens not only joined the conspiracy, but was the leader of the conspiracy.

The Government presented both direct and circumstantial evidence against Dickens, consisting of confessions of co-conspirators, recorded conversations between Dickens and co-conspirators, cell phone call and text records, surveillance video, corroborating physical evidence from co-conspirators, bank records, and more. While that alone was more than sufficient under the applicable standard, the Government also introduced video surveillance footage showing Dickens and his nephews coming and going from a hotel room. During a search of that hotel room, law enforcement discovered an X-acto knife, gloves, typewriter ribbon, typewriter correction tape, and a typewriter. The Government also presented evidence of data records from cell phones associated with Dickens, showing communications with co-conspirators regarding the check-cashing scheme, and showing that Dickens had accessed bank websites and conducted searches regarding the use of a typewriter.

Taken as a whole, the Government's evidence was more than sufficient to show that Dickens was part of the conspiracy. The overwhelming circumstantial evidence and testimony from multiple co-conspirators could easily lead a reasonable jury to conclude that Dickens was "K.T." and, consequently, that he participated in the bank fraud conspiracy.

### 3. The evidence is sufficient to sustain the jury's guilty verdict for aiding and abetting aggravated identity theft

Dickens does not directly challenge his conviction on Counts Two through Seven, presumably because an acquittal on Count One would necessarily result in an acquittal

on the remaining Counts. Nevertheless, the Court will also consider whether the evidence was sufficient to sustain a guilty verdict on Counts Two through Seven.

To establish guilt for aiding and abetting aggravated identity theft, the Government did not have to prove that Dickens committed the crime himself, but only that he aided and abetted the commission of the crime. *See* 18 U.S.C. § 2. To prove aggravated identity theft, the Government must show that the defendant "knowingly transfer[ed], or use[d], without lawful authority, a means of identification of another person" in relation to the felony offense charged – in this case, conspiracy to commit bank fraud. 18 U.S.C. § 1028A(a)(1). To be guilty of aiding and abetting, "a defendant must associate himself with the venture in a manner whereby he participates in it as something that he wishes to bring about and seeks by his acts to make succeed." *United States v. Martin*, 920 F.2d 345, 348 (6th Cir. 1990) (quoting *United States v. Quinn*, 901 F.2d 522, 530 n.6 (6th Cir. 1990)).

For the same reasons detailed above, the Government's evidence was sufficient to support a conviction for aiding and abetting aggravated identity theft in Counts Two through Seven. Accordingly, Dickens's Motion for Judgment of Acquittal will be denied.

**B. Motion for New Trial**

Federal Rule of Criminal Procedure 33 allows a defendant to request that any judgment be vacated and that a new trial be granted if the "interest of justice so requires." Fed. R. Crim. P. 33. That motion can be granted if the verdict "was against the manifest weight of the evidence," or if a "substantial legal error" occurred during the proceedings. *United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015) (quoting *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010)). "The defendant bears the burden of proving

that a new trial should be granted." *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994) (citing *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991)).

Defendant Dickens's Motion for a New Trial does not raise a specific basis for his claim. However, in his Motion for Judgment of Acquittal, Dickens argues that certain pieces of evidence should not have been admitted during trial. (Doc. # 295). The Court will construe this as an argument for new trial based on substantial legal error. The Court will also consider whether the verdict was against the weight of the evidence.

### 1. There are no substantial legal errors warranting a new trial

Any legal error that is significant enough to require reversal on appeal is an adequate ground for granting a new trial. *Munoz*, 605 F.3d at 373 (quoting with approval *United States v. Wal*, 389 F.3d 457, 474 (5th Cir. 2004)). Dickens previously filed a Motion to Suppress evidence obtained during his December 29, 2015 arrest (Doc. # 96), and requested an evidentiary hearing on the motion (Doc. # 173). The Magistrate Judge held an evidentiary hearing on the matter (Doc. # 182), and recommended that the Court deny Dickens's Motion to Suppress (Doc. # 207). Because Dickens objected to the Magistrate Judge's recommendation, this Court reviewed his objections *de novo*. (Doc. # 236). After careful review, this Court adopted the Magistrate Judge's conclusion that the investigating officers had reasonable suspicion to pull Dickens over, and had probable cause to arrest him. *Id.* Thus, Dickens's Motion to Suppress was denied. Reviewing Dickens's claim once again, the Court finds no legal error in its prior analysis.

Dickens claims that statements from Shellie Grubbs, a co-conspirator, were not reliable, and not sufficient on their own to establish probable cause. However, despite

Dickens's assertion, Grubbs's statements did not stand on their own; a substantial amount of evidence corroborated the statements. As this Court previously found:

> [Grubbs's] information did not stand on its own; other evidence provided corroboration. For instance, she gave the officers K.T.'s phone number, and someone later called her from that same number to discuss a check that did not clear. Grubbs later informed the officers about the type of car that K.T. typically drives, a grey Chevrolet Tahoe sporting a Kentucky license plate, and the location of their usual meeting spot. Indeed, when the officers asked Grubbs to arrange a meetup with K.T., Dickens rolled up in a grey Tahoe with a Kentucky license plate at the agreed-upon location. Thus, at that point, the investigating officers had "identifying facts specifically linked to … the suspect's location [and] to the suspect's vehicle." And that information was enough to give the officers "reasonable suspicion, grounded in specific and articulable facts," that Dickens "was involved in" the illegal check-cashing scheme.

(Doc. # 236 at 3) (internal citations omitted).

Additionally, Dickens claims that "the officers did not even know whether Dickens was the person they were even looking for," and that "there was no probable cause to arrest." (Doc. # 285 at 2). Probable cause is established when an officer has enough trustworthy information about the facts and circumstances to lead an objectively reasonable officer to believe that the person had committed (or was committing) an offense. *United States v. Romero*, 452 F.3d 610, 615 (6th Cir. 2006). When determining whether an arrest was supported by probable cause, Courts must look to the totality of the circumstances. *Id.*

When the officers conducted the traffic stop, they learned that Dickens was "K.T." – the object of their investigation. (Doc. # 207 at 10). Grubbs had described K.T. as a member, or even leader, of the conspiracy, and the officers had listened to the phone conversation between Grubbs and K.T., corroborating Grubbs's account of events. *Id.* at 14-15. Once Grubbs identified Dickens as the man she knew as K.T., the officers had a

reasonable basis to believe that Dickens was K.T., and thus, had probable cause to arrest him. Accordingly, Dickens's Motion to Suppress the evidence obtained at the time of his arrest was properly denied, and the evidence was admissible during trial. Therefore, the admission of this evidence does not constitute a substantial legal error.

### 2. The jury's verdict was not against the weight of the evidence

When considering whether a verdict was against the weight of the evidence, the district court acts "in the role of the thirteenth juror," and may consider the credibility of witnesses and the weight of the evidence. *Callahan*, 801 F.3d at 616 (quoting *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998)).

As discussed throughout this Order, the Government presented an overwhelming amount of evidence against Dickens. Witness testimony, phone records, and surveillance videos all weigh in favor of conviction. Dickens attempts to challenge the co-conspirator witnesses' credibility. However, the Government offered an array of evidence in the form of phone records, bank records, and physical evidence (typewriters, stolen checks, X-acto knives, etc.) to support the co-conspirators' testimony. Thus, the Court finds that the co-conspirators' statements and testimony were believable, and the great weight of the evidence supports the jury's guilty verdict. Therefore, a new trial is not warranted.

### III. Conclusion

Accordingly, **IT IS ORDERED** as follows:

(1) Defendant's Motion for Judgment of Acquittal (Doc. # 285) is **denied**; and

(2) Defendant's Motion for a New Trial (Doc. # 286) is **denied**.

(3) Defendant's sentencing remains scheduled for **June 20, 2017 at 10:00 a.m. in Covington, Kentucky**.

This 4th day of May, 2017.



Signed By:
David L. Bunning
United States District Judge

k:\data\orders\covington criminal\2016\16-22 order denying mfa and mnt.docx